UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JACKSON, | No. 2:12-cv-0124 JFM P |
| Plaintiff, | |
| v. | ORDER |
| SHANKARI REDDY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on claims raised in plaintiff's amended complaint against defendants Jennings, Kansier, Lysak, Reddy and Stocker.[1] (ECF Nos. 18.) The matter is now before the court on defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

STANDARDS FOR A MOTION BROUGHT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering such a motion, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most

---

[1] Plaintiff has separately filed with the court exhibits to his amended complaint (ECF No. 22) which will be deemed part thereof.

1  favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In order to survive
2  dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of
3  the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to
4  relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).
5  However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the
6  defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  Erickson,
7  551 U.S. 89, 93 (quoting Bell Atlantic, 550 U.S. at 554, in turn quoting Conley v. Gibson, 355
8  U.S. 41, 47 (1957).

## ALLEGATIONS OF THE AMENDED COMPLAINT

In his amended complaint plaintiff alleges as follows.  Plaintiff was sentenced to the California Department of Corrections and Rehabilitation in February 2008.  (Am. Compl. filed August 13, 2012 (ECF No. 18) at 3.)  Plaintiff was unaware of the contents of his medical records and of an original permanent placement issued regarding his custody by prison officials on March 15, 2008, until he received his medical record on March 25, 2011.  (Id. at 2.)  On March 15, 2008, prison officials had placed plaintiff on permanent mobility impairment status apparently due to a knee/leg condition he suffered which restricted him from a receiving a top bunk assignment and from using stairs.  (Id.)  On April 25, 2008, plaintiff was designated to Folsom State Prison (FSP).  Once at FSP, a Doe defendant confiscated plaintiff's cane, assigned plaintiff to the top floor of a unit, and told him that "his leg would eventually heal on its own."  (Id.)

On February 22, 2009, plaintiff received his first annual review and was told that he wasn't medically cleared for a prison job.  (Id.)  Without a job, plaintiff "couldn't lower his points and get to a safer yard."  (Id.)  For that reason, on February 24, 2009 plaintiff sent a medical request form to find out why he had not been medically cleared for work for nearly a year.  (Id.)  On March 10, 2009, plaintiff was seen by defendant Nurse Practitioner L. Lysak.  (Id.)  An x-ray was ordered, and plaintiff was "told he was a little unstable, but medically cleared to work."  (Id.)  Although a MRI is the only way to rule out an ACL tear in the knee, no MRI was ordered.  (Id.)

Plaintiff was given soft knee support and a bottom bunk chrono for a year but was then returned to a fourth floor cell assignment.  He remained in a fourth floor cell for three years, until

1 finally "his knee inevitably collapsed." (Id.) Plaintiff reinjured his knee on the yard on February
2 3, 2011. (Id. at 4.) On February 4, 2011, plaintiff sent out an emergency request for medical
3 care. (Id.) His medical appointment was rescheduled three times but he was finally seen by
4 defendant Dr. Shankari Reddy on February 14, 2011. Defendant Dr. Reddy ordered an x-ray and
5 a thirty-day lower bunk assignment for plaintiff. (Id.) Plaintiff told defendant Dr. Reddy he
6 needed a MRI for a proper diagnosis of his knee condition and that he would need a ground floor
7 chrono for a longer period of time. (Id.) Defendant Dr. Reddy told plaintiff that "only A.D.A.
8 got permanent ground floor cell, and was otherwise completely dismissive." (Id.)

9 On February 22, 2011, plaintiff saw defendant Nurse Practitioner Stephen Kansier. (Id.)
10 Defendant Kansier said he would order an x-ray for plaintiff but it appeared to plaintiff that
11 Kansier had not reviewed plaintiff's medical file since an x-ray had already been ordered a week
12 earlier. (Id.) Plaintiff told defendant Kansier he was going to file an inmate grievance about the
13 medical care he was being provided. (Id.) In response, defendant Kansier changed plaintiff's
14 permanent placement solely to retaliate against plaintiff. (Id.)

15 On March 1, 2011, plaintiff was taken to see a counselor and told that he would be
16 transferred because of defendant Kansier's action of changing his permanent placement. (Id. at
17 5.) On March 8, 2011, plaintiff filed an inmate grievance claiming that he had been subjected to a
18 retaliatory transfer. (Id.) On March 10, 2011, plaintiff requested his medical record and at that
19 time first discovered that his medical condition as reflected in those records had been ignored by
20 prison officials for three years. (Id.) On March 21, 2011, plaintiff told defendant Dr. Reddy
21 about the mistake made in changing his permanent placement which was resulting in plaintiff's
22 transfer. (Id.) Defendant Dr. Reddy refused to honor plaintiff's original placement. (Id.) On
23 April 12, 2011, plaintiff was transferred out of FSP to Salinas Valley State Prison (Salinas
24 Valley). (Id.)

25 On May 17, 2011, plaintiff received a response to both inmate grievances he had filed.
26 One grievance was denied and the other was partially granted. (Id.) According to plaintiff,
27 defendant Kim Stocker has worked systematically with the Salinas Valley appeals coordinator to
28 ensure that plaintiff's inmate grievances do not reach the Director's Level. On May 19, 2011,

1  plaintiff submitted a claim to the Claims Board of California.  (Id.)  Plaintiff has written four
2  letters to the Health Care Appeals Office at the Third Level and on four separate occasions has
3  received an identical letter from defendant L. Jennings.  (Id.)

4        On July 19, 2011, plaintiff was seen by a doctor who restored plaintiff's permanent
5  mobility impairment placement and told plaintiff that "his condition does not impact his
6  placement."  (Id. at 6.)  On September 9, 2011, plaintiff received a MRI, which "revealed the true
7  severity of his A.C.L. tear."  (Id.)  On December 7, 2011, surgery was performed on plaintiff to
8  repair the ACL tear.  (Id.)

9        Based on these factual allegations, plaintiff claims that defendants Dr. Reddy, Nurse
10  Practitioner Kansier, and Nurse Practitioner Lysak violated his rights under the Eighth
11  Amendment by acting with deliberate indifference to his serious knee condition.  (Id. at 7.)
12  Plaintiff also claims that defendants Dr. Reddy and Nurse Practitioner Kansier violated his rights
13  under the First Amendment by changing his permanent placement status and having him
14  transferred to another institution in retaliation for his filing of inmate grievances and complaints
15  regarding his medical care at FSP.  (Id. at 8.)  Finally, plaintiff claims that defendants Stocker and
16  Jennings violated his right to due process by rejecting and/or impeding his inmate appeals.

17  <center>DEFENDANTS' MOTION TO DISMISS</center>

18  I. Eighth Amendment

19        Defendants Dr. Reddy, Nurse Practitioner Kansier, and Nurse Practitioner Lysak contend
20  that plaintiff has failed to allege any facts in his amended complaint which suggest that any of
21  them acted with deliberate indifference in responding to his complaints concerning his knee
22  condition.  All three of these defendants argue that the facts alleged by plaintiff show that each of
23  them provided medical care and that none of them purposefully failed to adequately respond to
24  plaintiff's complaints.  In addition, defendant Nurse Practitioner Lysak contends that plaintiff has
25  failed to allege that any of Lysak's actions caused plaintiff any further injury.  For the reasons
26  discussed below, defendants' motion to dismiss plaintiff's Eighth Amendment claim will be
27  granted.
28  /////

1    In order to state a claim for violation of the Eighth Amendment based on inadequate
2 medical care, a plaintiff must allege facts which show that he had a serious medical need and that
3 the defendants were deliberately indifferent to that need. See Estelle v. Gamble, 429 U.S. 97, 106
4 (1976). In applying this standard, the Ninth Circuit has held that before it can be said that a
5 prisoner's civil rights have been abridged, "the indifference to his medical needs must be
6 substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
7 cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429
8 U.S. at 105-06.)

9    Deliberate indifference may be shown by the denial, delay or intentional interference with
10 medical treatment or by the way in which medical care is provided. Hutchinson v. United States,
11 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both
12 be aware of facts from which the inference could be drawn that a substantial risk of serious harm
13 exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus,
14 a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and
15 disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "[I]t is enough
16 that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."
17 Id. at 842.

18    A complaint that a physician has been negligent in diagnosing or treating a medical
19 condition does not state a valid claim of medical mistreatment under the Eighth Amendment.
20 Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.
21 See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A mere difference of opinion
22 between medical professionals concerning the appropriate course of treatment generally does not
23 amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051,
24 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of
25 opinion between a prisoner-patient and prison medical authorities regarding treatment does not
26 give rise to a [§]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).
27 /////
28 /////

5

A. <u>Defendant Nurse Practitioner Lysak</u>

Defendants contend that the factual allegations of plaintiff's amended complaint, if proven to be true, fail to establish that defendant Nurse Practitioner Lysak was deliberately indifferent to plaintiff's serious medical needs.[2] (ECF No. 26-1 at 6-7.) Plaintiff argues that defendant Nurse Practitioner Lysak purposefully denied him adequate medical care. (ECF No. 27 at 3.) The crux of plaintiff's claim in this regard is that defendant Lysak ignored the contents of his medical file which included a March 15, 2008 permanent mobility impairment status designation restricting plaintiff from a top bunk assignment and stairs. (<u>See</u> ECF No. 18 at 2.) According to the allegations of plaintiff's amended complaint, defendant Nurse Practitioner Lysak treated plaintiff on March 10, 2009, ordered an x-ray of plaintiff's knee, told plaintiff his knee was "a little unstable," medically cleared plaintiff to work pursuant to plaintiff's February 24, 2009 request, and gave plaintiff a soft knee support and a bottom bunk chrono for one year. <u>Id.</u> at 3. Plaintiff alleges that due to defendant Nurse Practitioner Lysak's medical treatment, his knee condition deteriorated until he finally reinjured it two years later on February 3, 2011. <u>Id.</u> at 4.

The court finds that plaintiff has failed to allege any facts that would support a claim for a deliberate indifference to his serious medical needs against defendant Nurse Practitioner Lysak. According to his own allegations, plaintiff did not seek treatment for an injury to his knee until two years after defendant Lysak treated plaintiff; when he reinjured it during an altercation on the prison yard on February 3, 2011. While plaintiff states a bare conclusion, the allegations of his amended complaint, even if proven true, do not establish that defendant Lysak's treatment caused plaintiff's knee condition to deteriorate over the two years leading up to the February 3, 2011, prison yard altercation. The facts as alleged by plaintiff, if proven, show only that on March 10, 2009, defendant Lysak treated plaintiff without delay and took reasonable measures to address the knee condition plaintiff presented at that time.

Moreover, plaintiff's allegations that defendant Nurse Practitioner Lysak should have heeded plaintiff's March 15, 2008, permanent mobility impairment status or should have ordered

---

[2] The court notes that defendants do not dispute whether plaintiff was suffering from a serious medical need at the time he sought treatment from the defendants. (ECF No. 26-1 at 6, 8.)

6

a MRI instead of an x-ray of his knee, amount to nothing more than a difference of opinion concerning the appropriate course of treatment which is insufficient to state a cognizable Eighth Amendment claim.  See Toguchi, 391 F.3d at 1060-61 ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citations omitted); see also Farmer, 511 U.S. at 835 (Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'") (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Therefore, defendants' motion to dismiss plaintiff's Eighth Amendment claim against defendant Nurse Practitioner Lysak will be granted.

B.  Defendants Dr. Reddy and Nurse Practitioner Kansier

Following the February 3, 2011, altercation that allegedly exacerbated his knee injury, plaintiff was treated by defendants Dr. Reddy and Nurse Practitioner Kansier.  Plaintiff alleges that on February 14, 2011, defendant Dr. Reddy ordered an x-ray and issued a thirty day lower bunk ground floor chrono.  (ECF No. 18 at 4.)  Plaintiff alleges that on February 22, 2011, defendant Nurse Practitioner Kansier treated him and ordered an x-ray of his knee.  (Id.)  Plaintiff also alleges that defendant Nurse Practitioner Kansier changed his permanent placement to include housing restrictions of a lower bunk assignment and no stairs.  (Id. at 5.)  As with defendant Nurse Practitioner Lysak, plaintiff alleges that defendants Dr. Reddy and Nurse Practitioner Kansier violated his Eighth Amendment rights by failing to adhere to his March 8, 2008 permanent mobility impairment restrictions and by failing to order a MRI of his knee rather than an x-ray.  (Id. at 4.)

With respect to the decision by defendants Dr. Reddy and Nurse Practitioner Kansier to order an x-ray of plaintiff's knee rather than a MRI, there is nothing in the allegations of plaintiff's amended complaint which would suggest that those decisions reflected a deliberate indifference to plaintiff's serious medical needs.  Deliberate indifference is shown by failing to respond to a prisoner's pain and a subsequent harm caused by the indifference.  Jett, 439 F.3d at 1096.  Here, plaintiff's own allegations demonstrate that the defendants did not fail to respond to

7

1  plaintiff's medical needs.  On the contrary, defendants Dr. Reddy and Nurse Practitioner Kansier
2  made an effort to address plaintiff's condition by ordering an x-ray and issuing a lower bunk
3  ground floor chrono.  (ECF No. 18 at 4.)  The court finds that plaintiff has failed to allege any
4  facts in his amended complaint that would indicate deliberate indifference to his serious medical
5  needs by defendants Dr. Reddy and Nurse Practitioner Kansier.  Again, the fact that plaintiff
6  believes he should have received a MRI rather than an x-ray amounts only to a difference of
7  opinion with medical providers which fails to give rise to a § 1983 claim.  See Franklin, 662 F.2d
8  at 1344; see also Toguchi, 391 F.3d at 1060-61; Farmer, 511 U.S. at 835.
9           Finally, the court finds that plaintiff's argument that the fact that he finally received a
10 MRI and knee surgery after his transfer to Salinas Valley proves defendants' deliberate
11 indifference to his medical condition, lacks merit.  (ECF No. 18 at 6.)  The fact that plaintiff
12 received a MRI after his transfer at most shows a mere difference of opinion between treating
13 physicians which does not give rise to a cognizable § 1983 claim.  See Toguchi, 391 F.3d at
14 1059-60 ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support
15 a claim of deliberate indifference.").
16          Therefore, defendants' motion to dismiss plaintiff's Eighth Amendment claim against
17 defendants Dr. Reddy and Nurse Practitioner Kansier will also be granted.
18 II.  First Amendment
19          Plaintiff alleges that defendants Dr. Reddy and Nurse Practitioner Kansier violated his
20 rights under the First Amendment by changing his permanent placement status and having him
21 transferred to Salinas Valley in retaliation for expressing his intention of filing an inmate
22 grievance following his medical appointment with defendant Kansier.  (ECF No. 18 at 5.)  In this
23 regard, plaintiff also alleges that changing his permanent placement status was "entirely for the
24 sole purpose of retaliatory transfer."  (Id.)  Defendants contend that even if defendants Dr. Reddy
25 and Nurse Practitioner Kansier took actions that resulted in plaintiff's transfer after he
26 communicated his intent to file an inmate grievance, that alone is insufficient to state a cognizable
27 First Amendment retaliation claim.  (ECF No. 26-1 at 9.)  Defendants also argue that the decision
28 to transfer plaintiff was directly related to the limitations imposed on him due to his knee injury.

(Id.)  For the reasons discussed below, defendants' motion to dismiss plaintiff's First Amendment claim will be granted.

It is well-established that prison inmates have a constitutional right to freedom from retaliation for engaging in activity protected by the First Amendment, including pursuing "'civil rights litigation in the courts.'" Rhodes v. Robinson, 408 F.3d 559, 566 (9th Cir. 2005) (quoting Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir.1995)).  A prisoner retaliation claim has five elements.  First, plaintiff must show that he engaged in conduct protected by the First Amendment.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  Second, a "plaintiff must claim that the defendant took adverse action against the plaintiff." Id. (citing Rhodes, 408 F.3d at 567.)  "The adverse action need not be an independent constitutional violation." Id. (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995).  Third, plaintiff must show a causal connection between the protected conduct and the adverse action.  Id.  Fourth, the plaintiff must prove either a chilling effect on the exercise of First Amendment rights or some other harm.  Id. Finally, plaintiff must show that the retaliatory action "'did not advance legitimate goals of the correctional institution.'" Id. (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).

Here, if defendants' actions advanced a legitimate correctional goal, plaintiff has no constitutional protection against a transfer to a different prison facility.  See Meachum v. Fano, 427 U.S. 215, 225-27 (1976) (prisoners have no protected liberty interest in being housed at a particular prison).  On the other hand, "an inmate may not be transferred to a new prison in retaliation for exercising his or her First Amendment rights." Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997).  See also Pratt, 65 F.3d at 806; Rizzo, 778 F.2d at 531.

In order to state a retaliation claim, a plaintiff must plead facts which, if proven, would suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Mere conclusions of hypothetical retaliation will not suffice, rather a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir.1990).  Moreover, the timing of events alone does not suffice to demonstrate retaliation.  See Huskey v. City of San

9

Jose, 204 F.3d 893, 899 (9th Cir. 2002) (A retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.")

Plaintiff has adequately alleged that: he was exercising his First Amendment right to file an inmate grievance; as a result of his protected conduct defendants Dr. Reddy and Nurse Practitioner Kansier took actions which resulted in his transfer; and that in doing so defendants "impeded [his] ability to access the courts." (ECF No. 18 at 8.)  However, with respect to the fifth factor, defendants argue that plaintiff has not sufficiently alleged that the defendants' conduct did not advance a legitimate correctional goal because on their face those actions were taken to ensure plaintiff "could use assistive devices to walk, and be housed on a ground floor in a lower bunk." (ECF No. 26-1 at 9.)  Plaintiff responds in conclusory fashion that "the only incentive to change [his] placement was to remove [him] and his serious medical need entirely." (ECF No. 27 at 7.)

The court concludes that plaintiff has failed to allege facts which suggest that his expressed intent to file an inmate grievance was the substantial or motivating factor behind the decision of defendants Dr. Reddy and Nurse Practitioner Kansier to change his permanent placement status. Soranno's Gasco, Inc., 874 F.2d at 1314.  Plaintiff's contention that defendants acted in retaliation for expressed intention to file an inmate grievance is based on sheer speculation.  Speculation alone cannot provide the crucial link between plaintiff's intent to file a grievance and the conduct of defendants that resulted in plaintiff's transfer.  Given plaintiff's insufficient allegations this case is distinguishable from those in which a retaliation claim has survived due to the timing of events combined with a defendant's statements to a plaintiff which raised legitimate questions regarding the defendant's motives.  See Brodheim v. Cry, 584 F.3d 1262, 1266, 1271 (9th Cir. 2009) (summary judgment denied on retaliation claim where evidence revealed that the defendant litigation coordinator had warned plaintiff "to be careful what you write"); Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (summary judgment precluded where, in addition to suspect timing and reliance on stale evidence, plaintiff's declaration stated that defendant correctional officer told plaintiff that due to his complaints and protests the defendant was going to validate him as a gang member).

In fact, it appears from the allegations of plaintiff's own amended complaint that he was insistent on obtaining a mobility impairment placement with restrictions on his assignment to a top bunk and his use of stairs.  If plaintiff's allegations were proven it would be established that defendants changed his housing restrictions to lower bunk and no stairs in an effort to accommodate plaintiff's request.  (ECF No. 22 at 4.)  Moreover, a hand-written response to plaintiff's inmate appeal states that FSP "inmates are subject to the use of stairs throughout the institution" which "prohibit[s] some inmates with mobility problems from being housed there."[3] Id. at 46.  The mere allegation in the first amended complaint that plaintiff's telling defendant Nurse Practitioner Kansier of his intention to file an inmate grievance was followed by plaintiff's transfer to another facility is insufficient to state a cognizable retaliation claim.[4]  See Huskey, 204 F.3d at 899; Frazier, 922 F.2d at 562 n.1.

 Given the response to plaintiff's inmate grievance which indicated that he was being transferred because FSP required stair and other types of ambulatory requirements inconsistent with plaintiff's needs in light of his knee injury, the court finds plaintiff has failed to allege a cognizable First Amendment claim for retaliation.  Therefore, defendants' motion to dismiss plaintiff's First Amendment claim will be granted.

III.  Fourteenth Amendment

Plaintiff alleges defendants Stocker and Jennings violated his right to due process by preventing his inmate appeals from reaching the director's level of review and otherwise ignoring

/////

/////

/////

/////

---

[3] A copy of this response is appended as an exhibit to plaintiff's amended complaint and is deemed part thereof for all purposes.  See Fed. R. Civ. P. 10(c).

[4] In his amended complaint, plaintiff alleges that a doctor told him his knee condition does not impact his placement.  (ECF No. 18 at 6.)  Plaintiff references page three of Exhibit A, however this page does not exist in his exhibits.  (See ECF No. 22 at 2.)  Nevertheless, plaintiff's conclusory statement does not diminish the fact that he has failed to allege any facts showing that his statement regarding filing an inmate grievance was the motivating factor behind the actions of defendants Reddy and Kansier which resulted in his transfer.

his inmate appeals. (ECF No. 18 at 5.)[5] In moving to dismiss this claim defendants argue that plaintiff has no Fourteenth Amendment due process right to an inmate grievance process. (ECF No. 26-1 at 10.) In his opposition, plaintiff argues that defendants Stocker and Jennings ignored certain regulations governing inmate grievance by, among other things, not waiving his first level appeal and failing to conduct an interview. (ECF No. 27 at 10.) For the reasons discussed below, defendants' motion to dismiss plaintiff's Fourteenth Amendment claim will be granted.

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Put another way, prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner. Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process his inmate grievances. See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb.2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov.10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

While plaintiff argues that defendants failed to comply with procedures and regulations governing inmate grievances, such policies and regulations do not create a protected liberty

---

[5] The undersigned notes that the exhibits to plaintiff's amended complaint, including hand-written copies of inmate appeal responses, indicate that his inmate appeals were in fact being processed and responded to by prison officials. (See ECF No. 22 at 28-51.) In this regard, plaintiff submitted health care grievances on February 22, 2011, and March 8, 2011. (Id. at 35, 41-42.) Responses thereto were sent to plaintiff on April 22, 2011, May 4, 2011, May 12, 2011, and May 13, 2011. (Id. at 37-40, 45-46, 28, 49, 29.) Plaintiff submitted a subsequent grievance requesting a second level review on May 17, 2011. (Id. at 36, 44.) On June 26, 2011, plaintiff submitted an appeal form requesting the status of his May 17, 2011, grievance. (Id. at 47.) Responses were sent to plaintiff on July 20, 2011, and August 3, 2011. (Id. at 31-32.) These responses indicated that plaintiff's appeal was cancelled at a lower level of review. Finally, plaintiff submitted first and second level appeal requests on September 7, 2011, and September 22, 2011. (Id. at 50-51.) Thus, even accepting plaintiff's allegations as true it would not appear that defendants prevented plaintiff's access to the inmate grievance process.

interest. Therefore, the court finds that plaintiff fails to state a cognizable claim, and defendants' motion to dismiss plaintiff's Fourteen Amendment claim will be granted.

IV. Leave to Amend

For the reasons explained above, plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted. The court has carefully considered whether plaintiff may be able to amend his complaint to state a claim upon which relief can be granted. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments). However, when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972). See also Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

Here, the court cannot say that it is now beyond doubt that the granting of leave to amend would be futile. Plaintiff's complaint will therefore be dismissed with leave granted to file a second amended complaint. Plaintiff is cautioned, however, that if he elects to file a second amended complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 680 (quoting Twombly, 550 U.S. at 557).

/////

1       In this regard, although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).  A plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support the plaintiff's claims.  Jones, 733 F.2d at 649.

Plaintiff is also reminded that the court cannot refer to a prior pleading in order to make a second amended complaint complete.  Local Rule 220 requires that any amended complaint be complete in itself without reference to prior pleadings.  The second amended complaint will supersede the first amended complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in any second amended complaint plaintiff elects to file, just as if it were the initial complaint filed in the case, each defendant must be listed in the caption and identified in the body of the complaint, and each claim and the involvement of each defendant must be sufficiently alleged.  Any second amended complaint filed by plaintiff must include concise but complete factual allegations describing the conduct and events which underlie his claims.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss (ECF No. 26) is granted; and

2.  Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of Practice; any second amended complaint plaintiff elects to file must bear the docket number assigned to this case and must be labeled "Second Amended Complaint;"

/////

/////

/////

failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.[6]

Dated: September 19, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

jack0124.mtd

---

[6] If, however, upon considering the court's analysis set forth in this order, plaintiff no longer wishes to pursue this action he may file with the court a notice of voluntary dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure.

15